Argued and submitted August 27, 1991, decision of the Court of Appeals reversed, judgment of the district court affirmed April 23, 1992

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# ANTHONY WADE MEYRICK,
*Respondent on Review.*

## (DC DCR 88-13646; CA A61490; SC S38249)

831 P2d 666

Ann Kelley, Assistant Attorney General, Salem, filed the petition and argued the cause for petitioner on review. With

her on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Arthur P. Stangell, Oregon City, argued the cause for respondent on review.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this criminal case, the Court of Appeals held that, because the record does not show that defendant understood the elements of the crime of which he was charged and convicted, the trial court erred when it allowed defendant to waive his right to counsel. *State v. Meyrick*, 106 Or App 682, 686, 809 P2d 710 (1991). We disagree with the Court of Appeals' holding, and we conclude that defendant knew of his right to counsel at trial and that he intentionally relinquished that right. Accordingly, we reverse the Court of Appeals' decision.

Defendant was charged with menacing and criminal mischief in the second degree, both Class A misdemeanors. Those charges arose out of a confrontation that occurred while the complainant was trying to serve civil process on defendant. At defendant's arraignment in November 1988, the complaint was read aloud and a copy was given to him. The court and defendant then engaged in this colloquy:

"COURT: Mr. Meyrick, the offense of menacing and the offense of criminal mischief in the second degree are both Class 'A' misdemeanors. They subject you to maximum penalties of one year in the county jail and/or a fine of twenty-five hundred dollars on each of the two charges. You have a right to have an attorney represent you with regard to these matters, and if you are indigent, you would have the right to have the court appoint an attorney for you.[1] You, too, have the right to remain silent concerning this matter and anything you might say about it may be used at a later trial or later hearing on this case. Now, would it be, first of all, do you understand those rights?

"DEFENDANT: Absolutely.

"COURT: And do you intend then to hire an attorney to help you with these?

"DEFENDANT: No, I intend to represent myself, your honor. It's a simple matter. This is—these are just accusations. It's a simple matter, easily resolved.

"* * * * *

"COURT: Now then, so, before you decide unilaterally that this is a simple matter, and that it can be easily resolved,

---

[1] Defendant does not argue that he was indigent.

and that you will represent yourself, which you have every right to do—I want to make sure you understand that whether you think it is a simple matter or don't think it is a simple matter, the maximum penalties are as indicated. And if you have misperceived the situation by virtue of inexperience concerning the legal system or the legal ramifications of any conduct in which you may have engaged, obviously the implications of that are pretty serious. So before you determine to represent yourself in this case, I want you to be fully advised of the potential problems in doing so, and if you decide that that is how you want to do this, that's fine, but I want you to understand, that if it doesn't go as simply as you think it might, that you can't later, after the fact, decide, 'well, gee, I should have maybe had an attorney.'

"DEFENDANT: I understand that.

"COURT: So, with that additional admonition, do you intend to hire an attorney, do you want to apply for appointed counsel, or do you desire to represent yourself?

"DEFENDANT: I desire to represent myself.

"COURT: Okay, the record then will so note and we will then continue this matter then until December 14th * * *.

"DEFENDANT: Your honor, due to the fact that I'm a student at Portland State and my final period is coming at that time * * * I'd request that this be set over until next year. * * *

"COURT: * * * Well, we'll go ahead and set this then for a pre-plea conference on January 4th at 8:30 a.m. And in the meantime, what you need to do * * * if you are going to represent yourself is to get copies of the police reports from the district attorney's office and review those and make sure that any witnesses that you would intend to call at trial that you have contact with so that you may prepare any defense you wish to present."

In January 1989, defendant appeared in court for a pre-plea conference. At that time, this exchange took place:

"DEFENDANT: Good morning, your honor. I represent myself. I'm here to plead not guilty.

"COURT: O.K. That's the way you want it. You don't want an attorney in this matter?

"DEFENDANT: No sir."

Defendant then told the court that he wanted a bench trial and he waived trial by jury.[2]

■        In May 1989, defendant appeared in court for trial. At that time, he was 25 years of age and a student at Portland State University. He had recently been a felony defendant in another criminal court. Before trial, the court renewed its inquiry about defendant's waiver of trial by jury. Defendant again stated that he waived trial by jury. The court then engaged in this further inquiry about his earlier waiver of counsel:

"COURT:   Now you also don't have an attorney—Mr. Meyrick is—I know you've been advised that you have a right to have an attorney represent you. Are you certain that you want to proceed on your own?

"DEFENDANT:   Yes sir. Very certain.

"COURT:   You've considered that and you're convinced that that's in your best interests?

"DEFENDANT:   In my best interests? Yes sir.

"COURT:   O.K., we'll go ahead and proceed then by way of court trial and given Mr. Meyrick's desire to represent himself then we'll proceed in that fashion."[3]

        After the state gave its opening statement, the trial court asked defendant:

"COURT:   Mr. Meyrick, any opening statement that you would like to make?

"DEFENDANT:   Yes sir. I'm defending myself in this matter because I feel the need to take charge of my own defense in the face of these burdens and charges. * * * *[M]y previous attorney, told me that my chances of winning this case by going it alone were akin to his chances of handling nuclear materials with his bare hands and not being affected. Although sobering, I've chosen to disregard his advice and defend myself. Simply, I shall try to call Mr. Summers' [the

---

[2] Defendant also appeared in court in February and March 1989 for pre-trial conferences. It appears that both conferences were concerned primarily with setting the trial date.

[3] The trial court made no explicit findings of whether defendant knew of his right to counsel and intentionally relinquished that right. Courts are strongly encouraged to make such findings.

complainant] testimony into question using his own conflicting reports and testimony from Officer Bowen and Kristi Steigler. I shall also attempt to show where Mr. Summers purposely lied to lend moral strength to his position in an attempt to promote his interests. By doing so, I hope to show that by the character of his testimony his entire statement must be held under the closest scrutiny and taken with a grain of salt. By this demonstration of the character of his testimony, I hope to remove the credibility of the witness as to my intent in the actions, therefore presenting a reasonable defense to the charges." (Emphasis added.)

Now represented by appellate counsel, defendant's sole contention on appeal was that the trial court erred in allowing him to represent himself at trial without first ascertaining that his waiver of counsel was intelligent and competent.[4] He argued, "at a minimum, the court must determine whether the accused understands the nature of the charge, the statutory offenses included therein, *the elements of the offense,* and the punishments which may be exacted, the pitfalls of defending himself, the possible advantage an attorney would provide, and the responsibility he incurs by undertaking his own defense." (Emphasis added.) He relied on Article I, section 11, of the Oregon Constitution, as construed in *State v. Verna,* 9 Or App 620, 626, 498 P2d 793 (1972), and the Sixth Amendment to the Constitution of the United States.

The Court of Appeals reversed and remanded for a new trial, explaining:

"In the light of Article I, section 11, of the Oregon Constitution, a court may accept a defendant's waiver of counsel only if it finds that the waiver is both intelligent and competent. It must

'[a]t minimum, * * * determine whether [a] defendant understands the nature of the charge, *the elements of the offense* and the punishments which may be exacted. Further informing him of some of the pitfalls of defending himself, the possible advantage that an attorney would provide, and the responsibility he incurs by taking his own defense will also serve to insure defendant's decision is made intelligently.' *State v. Verna,* [*supra,* 9 Or App at 626].

---

[4] Defendant does not argue that his waiver of counsel was involuntary.

"On none of the three occasions when the court addressed defendant did it determine *if he understood the elements of the offense of criminal mischief in the second degree. The record does not otherwise show that defendant had that understanding.* Accordingly, the record does not establish that defendant's decision to represent himself was the product of an intelligent and competent choice, and the court erred when it allowed him to waive counsel." *State v. Meyrick, supra,* 106 Or App at 686 (emphasis added; citations and footnote omitted).

■ On review, the state contends that the Court of Appeals erred in concluding that defendant's decision to waive his right to counsel was not valid merely because the record does not show that he understood the elements of the crime of which he was convicted. The state argues that a proper analysis of whether a defendant's waiver of counsel is valid under Article I, section 11, requires an examination of the totality of the circumstances in each case and that no specific catechism of advice or warnings is constitutionally mandated. The state further argues that the totality of the circumstances here shows that defendant's waiver of counsel was constitutionally adequate.

## STATE CONSTITUTIONAL CLAIM[5]

Article I, section 11, of the Oregon Constitution provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

■ ■ The Article I, section 11, right to counsel may be waived. *State v. Wagner,* 305 Or 115, 208, 752 P2d 1136 (1988), *vacated on other grounds sub nom Wagner v. Oregon,* 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989); *State ex rel Ott v. Cushing,* 289 Or 705, 709-10, 617 P2d 610 (1980); *State v. Butchek,* 121 Or 141, 152-53, 253 P 367, 254 P 805 (1927); *see* Annot. *Accused's Right To Represent Himself In State Criminal Proceedings—Modern State Cases,* 98 ALR3d 13 (1980). Courts, however, are reluctant to find that fundamental constitutional rights have been waived. *Huffman v.*

---

[5] The parties do not argue that there is any controlling state statutory or common law, and we find none. Thus, no sub-constitutional issue is presented. We proceed first to examine defendant's claim under the Oregon Constitution. *See State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983) (setting forth methodology).

*Alexander*, 197 Or 283, 321, 251 P2d 87, 253 P2d 289 (1953). Accordingly, a valid waiver will not be presumed from a silent record. *State v. Grenvik*, 291 Or 99, 102, 628 P2d 1195 (1981); *Miller v. Gladden*, 249 Or 51, 54, 437 P2d 119 (1968).

■　　　A waiver is an intentional relinquishment or abandonment of a known right or privilege. *Church v. Gladden*, 244 Or 308, 312-13, 417 P2d 993 (1966). Whether there has been an intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity; the charge (whether complicated or simple); the possible defenses available; and other relevant factors. *See Huffman v. Alexander, supra*, 197 Or at 322 (setting forth factors to be considered in determining validity of waiver of fundamental constitutional right).[6]

■　　　In determining whether a defendant's waiver of counsel was the intentional relinquishment or abandonment of a known right, the trial court should focus on what *the defendant* knows and understands.[7] This court has never stated precisely what, if anything, a trial court *must or should* tell a defendant who pleads not guilty after arraignment before the court may consider that defendant's request to waive counsel and to proceed to trial *pro se* is valid. Our cases generally hold only that, to be valid, a waiver must be voluntarily and intelligently made.[8] This has resulted in some

---

[6] For example, obvious cultural differences or lack of English language skills may be relevant to whether a defendant's waiver is intelligently made. *See State v. Vu*, 307 Or 419, 425, 770 P2d 577 (1989) ("Whatever the cultural disparities and alleged deficits in the English language, defendant's statement was not involuntary.").

[7] There are no governing statutes as there are on other related issues. For example, ORS 134.040 *et seq* requires that, if a defendant appears for arraignment without counsel, the court shall inform the defendant of the right to counsel and, if indigent, of the right to appointed counsel. If a defendant is entitled to appointed counsel, the court shall appoint counsel "unless the person waives counsel and the court approves the waiver." ORS 135.070 requires a preliminary hearing magistrate to inform the defendant of the right "to the aid of counsel." ORS 135.380 provides that a defendant shall not be required to plead to an offense punishable by imprisonment until represented by counsel, unless the defendant "knowingly" waives the right to counsel. ORS 135.385 specifies the advisals that a court must give a defendant before accepting a plea of guilty or no contest. ORS 135.390 provides that the court shall not accept a plea of guilty or no contest without first determining that the plea is voluntarily and intelligently made.

[8] Appellate courts are prone to substitute additional adjectives and adverbs in stating rules. For example, in this case the Court of Appeals stated that a trial court

confusion concerning the proper standard to be applied by trial courts in considering a proffered waiver of counsel.

■ We hold that a trial court may accept a defendant's proffered waiver of counsel only if it finds that the defendant knows of his or her right to counsel and, if indigent, of his or her right to court-appointed counsel, and that the defendant intentionally relinquishes or abandons that right.

A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate.[9]

---

may accept a waiver of counsel only if it finds that the waiver is both "intelligent and competent." *State v. Meyrick*, 106 Or App 682, 686, 809 P2d 710 (1991). That court also has stated that a valid waiver must be "intelligent and understanding." *State v. Rocha*, 48 Or App 1017, 1023, 618 P2d 475 (1980). This court has stated that, to be valid, a waiver must be "intelligently and knowingly" made, *State v. Gullings*, 244 Or 173, 182, 416 P2d 311 (1966), and must be "understandingly made with knowledge by the party of his rights." *Huffman v. Alexander*, 197 Or 283, 322, 251 P2d 87, 253 P2d 289 (1953). We also have stated that a valid waiver of the right to counsel requires "knowledge" of the right to counsel. *Miller v. Gladden*, 249 Or 51, 54, 437 P2d 119 (1968). Oregon statutes on related topics use the words "knowingly" and "voluntarily and intelligently." *See, supra* n 7.

The "intentional" component of a waiver has nothing to do with the "known right" component. It refers to a defendant's "intent" to waive the right. Encompassed within the "intentional" component is the requirement that the choice must be "voluntary." In the absence of some form of coercion, most intentional acts also are voluntary acts. The "known right" component of a waiver has nothing to do with the "intentional" component. It refers to a defendant's knowledge and understanding of the right to counsel. It encompasses "intelligent and competent," "intelligently," and "knowingly and intelligently." This is the more expansive of the two components, because a defendant's knowledge and understanding of the right to counsel and of the dangers and disadvantages of self-representation may turn on things other than on what the court tells the defendant, such as the defendant's age, education, and experience and the complexity of the charges and possible defenses.

[9] One method of ensuring that a defendant understands the information given by the court is to have the defendant repeat the essence of the information or explain

██  Article I, section 11, does not require a catechism by the trial court, however, before the right to counsel may be validly waived by a defendant. The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right. Specifically, the automatic reversal of a conviction solely because the trial court did not determine that defendant understood the specific elements of the crime of which he was charged and convicted is not required by Article I, section 11.

We proceed to apply the above considerations to the record in this case. Defendant was charged with two misdemeanors. At his arraignment, the court advised him of the charges against him and of the maximum penalties that could be imposed on conviction of those charges. Defendant does not argue that he did not understand the charges or the maximum penalties that could be imposed. Next, the court advised defendant of his right to counsel and, if indigent, his right to court-appointed counsel. When the court asked defendant if he understood those rights, defendant answered unequivocally, "Absolutely." The court asked defendant whether he intended to hire an attorney, apply for appointed counsel, or represent himself. Defendant answered, "No, I intend to represent myself, your honor. It's a simple matter. This is — these are just accusations. It's a simple matter, easily resolved."

Thereafter, the trial court cautioned defendant that if he had "misperceived the situation by virtue of [his] inexperience concerning the legal system or the legal ramifications of any conduct in which [he] may have engaged, obviously the implications of that are pretty serious." The court further cautioned defendant about of the "potential problems" that he faced in representing himself and warned him that, if he did not get the result that he expected at trial,

his or her understanding of it to the court. A criminal trial setting can be an intimidating and frightening place. Leading questions put to a defendant may be answered in the affirmative without actual understanding. Thus, courts should strive to demonstrate on the record that a defendant understands the implications of the waiver. We emphasize, however, that a trial court's failure to follow this suggestion does not require an automatic reversal of a defendant's conviction.

he would not be permitted to complain on appeal that he "should have maybe had an attorney." Defendant answered unequivocally, "I understand that." After those additional admonitions, the court again asked defendant whether he intended to hire a lawyer, wanted appointed counsel, or desired to represent himself. Defendant answered, "I desire to represent myself." The trial court then instructed defendant that, if he was going to represent himself, he needed "to get copies of the police reports from the district attorney's office and review those and make sure that any witnesses that you intend to call at trial [be contacted] so that you may prepare any defense you wish to present." In considering and then accepting defendant's waiver of counsel, the court was able to observe and assess his competency and demeanor and his knowledge of the right to counsel that he was relinquishing.

At the pre-plea conference several weeks later, defendant told the court unequivocally, "[Y]our honor. I represent myself. I'm here to plead not guilty." When the court inquired, "You don't want an attorney in this matter?", defendant answered, "No sir." Before trial, defendant was given a third opportunity to obtain counsel. At that time, the trial court asked defendant if he was certain that he wanted to proceed without counsel. Defendant responded, "Yes sir. Very certain." When the court inquired further of defendant, "You've considered [waiver of counsel] and you're convinced that that's in your best interests?", defendant answered, "In my best interests? Yes sir."

Moreover, the record shows that before trial defendant had discussed his case with an attorney. During his opening statement at trial, defendant told the court that that attorney had warned him that his chances of winning his case without counsel "were akin to his chances of handling nuclear materials with his bare hands and not being affected." Defendant added, "Although [that advice is] sobering, I've chosen to disregard [the attorney's] advice and defend myself." Defendant's statement to the trial court shows that he knew that he had a right to be represented by a lawyer at trial, that he understood the dangers and disadvantages of self-representation, and that he intentionally

relinquished his right to counsel.[10] Defendant had ample time to reconsider his original decision to waive counsel. From his arraignment in November 1988 through his sentencing in June 1989, defendant never departed from his unequivocal demand to represent himself. At the relevant time, defendant was 25 years of age and a student at Portland State University. He had recently been a felony defendant in another criminal court.

After examining the totality of the circumstances shown by the record here, we conclude that defendant knew that he had a right to be represented by counsel at trial and that he intentionally relinquished that right. The Court of Appeals erred in holding otherwise.

## FEDERAL CONSTITUTIONAL CLAIM

■ In the light of its decision under the Oregon Constitution, the Court of Appeals did not consider defendant's Sixth Amendment claim. *State v. Meyrick, supra,* 106 Or App at 686 n 2. Because we find no violation of Article I, section 11, we will consider defendant's Sixth Amendment claim. Defendant does not submit any independent reason why his argument under the federal constitution should lead to a different result than his argument under the state constitution.

The Sixth Amendment to the United States Constitution provides in part:

"In all criminal prosecutions, the accused shall enjoy the right to * * * have the Assistance of Counsel for his defence [*sic*]."[11]

■ The Sixth Amendment right to counsel may be waived. *Faretta v. California,* 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975); *see* Annot., *Supreme Court's View As To What Constitutes Valid Waiver Of Accused's Federal Constitutional Right To Counsel,* 101 L Ed 2d 1017 (1990). Courts

---

[10] *See Mansfield v. Gladden,* 249 Or 504, 507, 439 P2d 611 (1968) (where defendant represents to trial court that he had been advised by his attorney concerning his rights and does not wish to be represented by counsel at trial, it may be inferred that he had knowledge of those things necessary to a "knowing" wavier of counsel).

[11] The Sixth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Gideon v. Wainwright,* 372 US 335, 342-45, 83 S Ct 792, 9 L Ed 2d 799 (1963).

indulge in every reasonable presumption against waiver of the right to counsel. *Johnson v. Zerbst*, 304 US 458, 465, 58 S Ct 1019, 82 L Ed 1461 (1938). Accordingly, a valid waiver will not be presumed from a silent record. *Burgett v. Texas*, 389 US 109, 114-15, 88 S Ct 258, 19 L Ed 2d 319 (1967).

A waiver of the Sixth Amendment right to counsel must be voluntary, knowing, and intelligent, as must any waiver of constitutional rights. *Argersinger v. Hamlin*, 407 US 25, 37, 92 S Ct 2006, 32 L Ed 2d 530 (1972).[12] A waiver is valid only when it reflects an intentional relinquishment or abandonment of a known right or privilege. *Patterson v. Illinois*, 487 US 285, 292-93, 108 S Ct 2389, 101 L Ed 2d 261 (1988) (quoting *Johnson v. Zerbst, supra*, 304 US at 464).

In *Faretta v. California, supra*, 422 US 835-36, the United States Supreme Court articulated the test for a valid waiver of counsel:

> "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Johnson v. Zerbst*, 304 US at 464-65. *Cf. Von Moltke v. Gillies*, 332 US 708, 723-24, 68 S Ct 316, 92 L Ed 309 [1948] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann*, 317 US [269, 279, 63 S Ct 236, 87 L Ed 268 (1942)]."

In determining whether a waiver was knowingly and intelligently made, the proper inquiry should focus on the assessment of the defendant's "knowing exercise of the right to defend himself." *Faretta v. California, supra*, 422 US

---

[12] Like this state's appellate courts, n 8 *supra*, the United States Supreme Court has used varying adjectives and adverbs in stating the requirements for a valid waiver of counsel. Annot., *Supreme Court's View As To What Constitutes Valid Waiver Of Accused's Federal Constitutional Right To Counsel*, 101 L Ed 2d 1017, 1023-24 (1990).

at 836.[13] The determination of whether there has been a knowing and intelligent waiver of the right to counsel must depend, in each case, on the particular circumstances surrounding that case, including the background, experience, and conduct of the defendant. *Johnson v. Zerbst, supra*, 304 US at 464. The issue here, then, is whether defendant "knowingly and intelligently" waived his Sixth Amendment right to counsel. *Patterson v. Illinois, supra*, 487 US at 292.[14]

After examining the totality of the circumstances shown by the record and as recited above, we conclude that defendant knowingly and intelligently waived his Sixth Amendment right to counsel. He was aware of his right to counsel and of the dangers and disadvantages of self-representation. The record shows that he knew what he was doing and that his choice to proceed *pro se* was made "with eyes open." *Faretta v. California, supra*, 422 US at 835-36.

In summary, we hold that the trial court did not err when it allowed defendant to waive his right to counsel.[15] We therefore affirm defendant's conviction.

The decision of the Court of Appeals is reversed. The judgment of the district court is affirmed.

---

[13] No specific inquiries or special hearings must be conducted before a defendant's waiver of Sixth Amendment rights will be considered "knowing and intelligent." *United States v. Kimmel*, 672 F2d 720, 721-22 (9th Cir 1982); *United States v. Gillings*, 568 F2d 1307, 1308-09 (9th Cir); *cert den* 436 US 919 (1978).

[14] As noted above at note 4, defendant does not argue that his waiver of counsel was involuntary.

[15] In the light of our holding that the trial court did not err when it allowed defendant to waive his right to counsel, we need not consider the question of whether the acceptance of an invalid waiver of counsel may ever be treated as harmless error.