Argued and submitted December 19, 2011, affirmed September 26, 2012, petition for review denied April 11, 2013 (353 Or 445)

In the Matter of C. S.,
a Youth.

STATE OF OREGON,
*Petitioner-Respondent,*

*v.*

C. S.,
*Appellant.*

Petition Number 042010CS;
Coos County Circuit Court
10JV0078; A146043

287 P3d 1238

Angela Sherbo argued the cause and filed the briefs for appellant.

Michael R. Salvas, Certified Law Student, argued the cause for respondent. With him on the brief was John R.

Kroger, Attorney General, Mary Williams, Solicitor General, and Carolyn Alexander, Senior Assistant Attorney General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Youth in this delinquency proceeding seeks reversal of a trial court judgment denying her motion to withdraw her admission to an allegation that she had engaged in conduct that, if committed by an adult, would constitute the crime of first-degree theft, and imposing restitution based on that conduct. In particular, youth asserts on appeal that she was entitled to withdraw the admission because it was made after she had waived her right to counsel but that her waiver of counsel was not made knowingly, voluntarily, and intelligently. Youth also asserts that, in entering the jurisdictional order that preceded the challenged judgment, the trial court erred in placing youth in the custody of the Oregon Youth Authority for a period not to exceed her eighteenth birthday. With respect to youth's second argument, we agree with the state that youth, not having appealed from the jurisdictional judgment, may not now challenge it in the course of appealing a subsequent judgment. *See, e.g., State ex rel Juv Dept. v. Rial,* 181 Or App 249, 46 P3d 217 (2002). We reject youth's second argument without further discussion. As for youth's first argument, we conclude that the argument she makes on appeal was not preserved in the court below, and that no error is apparent on the face of the record. Accordingly, we affirm.

The pertinent facts are procedural, and not in dispute. On April 20, 2010, a petition was filed in the juvenile court alleging that youth, then 13 years old, was within the jurisdiction of the court for engaging in conduct that, if committed by an adult, would constitute fourth-degree assault, harassment, and first-degree theft. With respect to the theft—the only allegation at issue here—the petition alleged that, "[o]n or between 3/15/10 and 4/09/10 said youth did unlawfully and intentionally commit theft of a gym bag and its contents, of the total value of $100.00 or more, the property of [the victim]." Youth made an initial appearance before the juvenile court on that date, and was informed of her right to an attorney. The court also told youth's father where he needed to fill out the paperwork to request an attorney and suggested that he needed to do so right away if the youth was to have an attorney when she was scheduled to appear on the following day.

The following day, youth appeared without an attorney. The court asked her if she had requested an attorney and whether she intended to admit to the charges. After youth gave an equivocal answer, the court asked her with more specificity about whether she planned to admit having committed the alleged assault, harassment, and theft. The court explained to youth her right to a trial, the state's obligation to prove the charges beyond a reasonable doubt, and that, by admitting the conduct, youth would be giving up those rights. Youth indicated that she understood those rights. The court then went on to explain youth's right to an attorney and the advantages of having an attorney. Youth indicated that she understood that right. The court then explained that, if youth admitted to the charges, she would be giving up all of those rights, and youth indicated that she understood. The court then read the charges to youth, including the theft charge set forth above, and asked her if they were true, to which she responded that they were.

On May 10, 2010, the court entered a dispositional judgment making youth a ward of the court. As noted above, no appeal was taken from that judgment and its propriety is not at issue on appeal.

Subsequently, the court appointed an attorney to represent youth with respect to restitution on the theft matter and scheduled a restitution hearing. The state sought restitution in the amount of $340 for the gym bag and all of its contents, including a pair of jeans, a pair of shoes, and two shirts. Prior to the restitution hearing, youth's counsel filed with the court a "motion to withdraw admission as to Count 3." That motion provided:

"The Youth * * * moves the court for an order permitting the Youth to withdraw her admission to that portion of Count 3 of the Petition filed April 20, 2010, which alleges that the Youth committed theft of a gym bag, that portion that alleges the Youth committed theft of the contents of a gym bag, except for an Aeropostale tank top and an Aeropostale long-sleeved top, and that portion that alleges that the total value of the items taken was $100 or more.

"The basis for this Motion is that the Youth was not represented by counsel at the time of the admission in this matter. The youth states that she did not understand the

full import of the allegations she was admitting to and for the further reason that the Youth states she did not commit that crime (although the Youth admits theft of the above-mentioned Aeropostale tank top and Aeropostale long-sleeved top)."

In an affidavit attached to the motion, counsel averred that the police report concerning the theft confirmed that youth had admitted to theft of the two shirts but had denied taking the bag and its other contents.

A hearing was held on youth's motion to withdraw the admission, and a tape of the proceedings on April 20 and 21, 2010, was admitted into evidence. At the start of the hearing, the court asked if anyone had listened to the tape, and the prosecutor replied that she had listened to it. The following exchange occurred:

"THE COURT: And did—did I mention the gym bag when I asked her if she was—she did it?

"[PROSECUTOR]: You did, Your Honor. You mentioned—you explained to her in detail her right to an attorney. You also explained the charges. You mentioned that she was accused of stealing the property of [the victim] worth more than $100. You mentioned on at least one occasion that that was a gym bag and its contents."

The evidence provided by youth was, in essence, that she had little recollection of the April 21 proceeding, but that she had intended to admit only to taking the shirts, and not the gym bag and its contents. At one point, counsel asked youth:

"[DEFENSE COUNSEL]: Okay. What is your understanding of what your rights were back on April 21st about that charge?

"THE COURT: I don't understand—I don't know where you're going, [defense counsel]. Your only motion—basis of your motion is just that she didn't understand that she was admitting to stealing all the contents. It has nothing to do with what her rights were, or not.

"[DEFENSE COUNSEL]: Okay."

After youth testified, the following exchange took place:

"THE COURT:  [Defense counsel,] did you listen to the—

"[DEFENSE COUNSEL]:  I'm sorry. I did not listen to it.

"THE COURT:  Do you have any problem with [the prosecutor's] statements about what is on the tape?

"[DEFENSE COUNSEL]:  I—I trust [the prosecutor] isn't going to make things up, so—"

The court indicated that the prosecutor's description of the tape sounded like what the court normally did in such proceedings. The court then asked counsel, "Do you have anything else?" to which counsel replied that he would be calling youth's father to testify.

Youth's father testified that, after the theft had been reported, they had gone through youth's belongings and had found only the two shirts, and not any of the other missing items.

In closing, defense counsel argued that, although "the court did explain to her what she was admitting," restitution had not been discussed, and thus youth did not understand the full import of her admission. He further noted that the items in the bag for which the state was seeking restitution had not been specifically alleged in the petition or discussed at the plea hearing. He emphasized that only the two shirts had been located and concluded:

"I guess I would also make the argument that to the extent that she didn't understand what she was doing— some of the things she did not understand, such as about restitution, would be a violation of her due process rights. To be adjudicated on something that she wasn't understanding what she was doing, and to pay restitution on things that aren't delineated, and that weren't specified, and that she didn't do."

The trial court denied the motion:

"I think she had enough understanding of what the charge was. She read it. She heard it. It said 'gym bag' specifically. And she's admitting that even though those items weren't specified, she admitted she stole two items that were actually in the gym bag.

"So, with all of that, I think there's enough—there's not enough to show that she wasn't aware of what she was being charged with. So I'm going to deny the Motion to Withdraw."

Subsequently, the court ordered restitution in an amount reflecting the contents of the gym bag. As noted, youth appeals from the judgment denying her motion to withdraw her admission and imposing restitution.

On appeal, youth asserts that "the trial court erred in concluding that youth, who was 13 years old and in the seventh grade, voluntarily, knowingly and intelligently waived her right to counsel and her right to trial." She then asserts that, under the test set forth in *State v. Meyrick*, 313 Or 125, 831 P2d 666 (1992), the court's colloquy with youth before she waived her right to counsel was inadequate to inform her of the dangers and disadvantages of not being represented by counsel. The state responds that defendant failed to preserve that argument when she made her motion to partially withdraw her admission relating to the theft. In response, youth asserts that her counsel's reference in the motion to the fact that she was not represented at the plea hearing adequately preserved the issue. Alternatively, youth asserts that, if the issue was not sufficiently preserved, the error is apparent on the face of the record and this court should exercise its discretion to correct it.

We conclude that any error with respect to the validity of youth's waiver of her right to counsel was not preserved. Although we agree with youth that the written motion did mention that youth had been unrepresented, and thus *could have* been the basis for making an argument to the trial court that her waiver of counsel was not knowing, voluntary, and intelligent, counsel made no such argument in the motion or at the hearing. Rather, as described in detail above, counsel's argument, and evidence, pertained to whether youth had intended to admit to theft of the gym bag, or only theft of some of the bag's contents. Moreover, at the one point in the hearing where counsel did make an inquiry of youth about what she had understood about her rights, the court cut off counsel, indicating that the "basis of your motion is just that she didn't understand that she was

admitting to stealing all the contents. It has nothing to do with what her rights were, or not," to which counsel replied, "Okay." Had counsel intended to raise the issue youth now asserts on appeal, at that juncture in the hearing, counsel would have spoken up and explained to the court that, in fact, his motion was not limited to youth's understanding of what she was admitting, but concerned the validity of her waiver of counsel. Counsel did not do that. Moreover, the fact that counsel did not do that is unsurprising, given that counsel told the court that he had not, in fact, listened to the tape of the plea hearing, and thus would have had no basis for making an argument that the court's colloquy with youth was inadequate to satisfy *Meyrick*. Given this record, we must conclude that youth did not preserve the argument she now makes on appeal.

Youth argues alternatively that we should treat this matter as "plain error" apparent on the face of the record. ORAP 5.45(1). For error to be "plain," it must be an error of law, it must be apparent, meaning the legal point must be obvious—not reasonably in dispute—and it must appear on the record, meaning that the court need not go outside the record or choose between competing inferences to identify the error. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Here, although we agree with youth that the asserted error is an error of law, we do not agree that the legal point that she is making is not reasonably in dispute.

This is not a case in which the court failed to engage in a colloquy with youth concerning her waiver of the right to counsel.[1] The court discussed with youth her right to an attorney and, as noted above, youth indicated that she understood. In arguing on appeal that more was required in these circumstances, youth relies on neurological studies of adolescents that indicate that adolescent brains simply

---

[1] In the colloquy, the court explained that youth was entitled to a court-appointed attorney if she couldn't afford to hire one, that the attorney would represent only youth, that the attorney "know[s] what the law is, you don't. That means especially at your age it's just nearly impossible for you to defend yourself because you don't know what you're doing. The attorney does." The court went on to state that the attorney would explain what the state needed to prove, would discuss police reports with her, would talk to her and other witnesses, would discuss self-defense, and would advise her on whether she should go to trial or should admit the allegations.

are not as good at making this type of decision as adult brains are, and asserts that "juveniles have a heightened propensity for risk-taking, impulsivity, and reckless behavior because the cortical structures of the juvenile brain are not fully developed." Youth suggests on appeal that, in order to ensure the adequacy of a waiver of counsel in a situation such as this, an explanation of the right to counsel, followed by assurances by a youth that the youth understands, is insufficient. Rather, youth posits, the court must not ask leading questions, and should have a youth repeat back his or her understanding of the right being waived. *See, e.g., Meyrick*, 313 Or at 133-34 n 9 ("One method of ensuring that a defendant understands the information given by the court is to have the defendant repeat the essence of the information or explain his or her understanding of it to the court.").

The difficulty with youth's position is that the legal point youth is making is for an extension of existing law—a refinement, so to speak, of the *Meyrick* requirements in circumstances where a young adolescent is facing charges. When the question concerns whether to extend existing law in a new way, we are not able to conclude that "the legal point is obvious, not reasonably in dispute." *Brown*, 310 Or at 355; *see, e.g., State v. Fuerte-Corria*, 196 Or App 170, 173, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005) (error was not apparent on the face of the record where law had not previously been extended in the manner advocated by the defendant).

In sum, we reject youth's first assignment of error as unpreserved and not apparent on the face of the record. We reject youth's second assignment of error because it does not pertain to the judgment that youth has appealed.

Affirmed.