No. 308 April 22, 2026 551

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SKY THREEEAGLES,
aka Louis Leonard Mendoza,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR9700728; A183602

Ulanda L. Watkins, Judge.

Argued and submitted March 18, 2026.

Mark Kimbrell argued the cause and filed the opening and reply brief for appellant. Sky ThreeEagles filed the supplemental brief *pro se.*

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Deputy Attorney General.

Before Tookey, Presiding Judge, Jacquot, Judge, and Kistler, Senior Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for three counts of first-degree sodomy. Defendant was convicted by a nonunanimous jury in 1997, he successfully petitioned for post-conviction relief under *Watkins v. Ackley*, 370 Or 604, 523 P3d 86 (2022), and his convictions were vacated. After a second trial, which was a bench trial, the court acquitted defendant on two counts, merged two others, and entered a judgment of conviction for three counts of sodomy. On appeal, we focus on defendant's fourth assignment of error, in which he argues that the trial court erred in accepting his pretrial waiver of his right to self-representation. We agree. We conclude that defendant did not knowingly waive that right because his waiver was based, at least in part, on the trial court's pretrial ruling that defendant was required to participate in jury selection. That ruling left defendant with a mistaken understanding of the scope of his right to self-representation. The trial court's error in accepting defendant's waiver was not harmless, so we reverse and remand.

## FACTS

We describe the relevant procedural facts. About three weeks before trial, at a pretrial hearing, defendant indicated that he sought to represent himself, and his court-appointed attorney stated that he would be available to stay on as defendant's legal advisor. To determine whether defendant's waiver of his right to counsel was knowing and voluntary, the trial court explained the benefits of representation that defendant would be losing and that defendant would be "solely responsible" for the presentation of his case at trial. Defendant responded, "That's good." Defendant also completed a written waiver of counsel form, and the trial court determined that defendant signed it freely and voluntarily. The trial court accepted defendant's waiver of counsel, relieved his attorney as counsel of record, and ordered the attorney to stay on as a legal advisor.

At a later pretrial hearing on the morning of his scheduled jury trial, defendant, proceeding *pro se*, argued that he should be permitted to wear his prison clothes at trial. Defendant wanted the jury "to know the truth, how

I present myself, \*\*\* and how I [have] lived for the last 26 years \*\*\* as a convict." Defendant argued that it was his decision to make, and if the jury found him guilty after a trial in prison clothes, he could "live with that."

The trial court indicated that it would not allow defendant to wear his prison clothes because, if defendant intended to act as his own lawyer, then he would be held to "the same standard that any lawyer would be held to," which included "wearing proper attire." The court further explained that, during his second trial, the jury would not be permitted to know that there had been a prior trial. The court also pointed out that wearing prison clothes risked violating defendant's due process right to a fair trial because it could lead the jury to assume that defendant was guilty of the charges.

When defendant continued to talk about this matter, the trial court reiterated that, if defendant intended to represent himself, then he would be held to the "same decorum rules" that applied to all attorneys. The court further explained that every trial consisted of limitations on how the case was presented to the jury because the court had to make sure that the trial was conducted in a way that protected defendant's rights. Defendant relented and indicated that he "concur[red] with everything" the court said, and that he would wear civilian clothes.

When discussing jury selection, defendant indicated that he did not intend to ask questions of the potential jurors because he believed that the composition of the jury was "God's will." The trial court responded that it "would not be okay with that," because defense attorneys were required to participate in selecting a jury. Defendant indicated that there was "so much that happened outside the trial that I want to bring up to \*\*\* the jury," but the court explained that the jury would only hear information from witnesses, and the jury would base its decision on the facts presented during the trial.

Defendant stated that he did not intend to testify, and the trial court explained that that could create problems regarding the admissibility of much of the information

defendant wanted the jury to consider. The trial court reiterated that it was "not okay" with defendant's statements that he would not participate in jury selection. The discussion turned to questions defendant wanted to ask the jury, and defendant was surprised to learn that he could ask potential jurors whether they were "Christians" or members of a particular church. The court explained that those questions were permissible during jury selection because defendant would be trying to ascertain whether the potential jurors could be fair to him.

After the trial court provided defendant with jury questionnaires to review, defendant reconsidered whether he should proceed without an attorney. He explained that the trial was "a serious one," that his life was "at stake," and that how he planned to present the case to the jury was "not acceptable to the Court." The court clarified that those limitations were due to "the rules of evidence." Defendant reiterated that he did not want to testify, and he asked whether he would have to testify if his legal advisor was appointed as his attorney. The court clarified that he would not have to testify, and it was defendant's decision to make. Defendant stated that he was "confused" about what he could tell the jury, and he expressed concern that if he could only talk about what happened then he did not have a chance.

Referring to his legal advisor, defendant stated the advisor "would know how to present what happened at the trial to the jury [better] than I do. See, because right now I'm frustrated, you know, because I wanted, you know, to present my side of the story my way *** so the jury can understand me as an individual." Defendant asked whether his legal advisor could take over as his attorney. The court indicated that he could, but the advisor stated he was not ready to immediately go to trial. However, defendant did not want to stay in jail any longer than necessary so he stated that he would continue to proceed *pro se*.

The court pointed out that defendant had articulated "very valid reasons why you should have a lawyer. And so the fact that you are just now seeing how hard this is and the limitations on what you can and can't say in front of a jury, those limitations are also going to exist for your

lawyer. But you have now said that maybe I shouldn't be my own lawyer, which is smart." The trial court took a break to permit defendant to have a conversation with his legal advisor. After a recess, the legal advisor indicated that defendant was considering waiving his right to a jury trial but continuing to represent himself. The legal advisor explained that he had tried "to parse out the issue," and "the issue is the jury selection piece," which defendant did not want to do.

After an exchange with the prosecutor, the trial court questioned defendant as follows:

> "THE COURT:   You had an opportunity to talk to *** your legal advisor. And before we all left the courtroom, you said that—you started to say that, 'Oh, my gosh, being a lawyer is harder than I thought and maybe I do need a lawyer.'

> "And so I need to ask you now, have you changed your mind and do you wish to have a lawyer and no longer represent yourself?

> "[DEFENDANT]:   Okay. What we talked about was *** I can have a trial with just a judge.

> "THE COURT:   You could. You could have a bench trial.

> "[DEFENDANT]:   Yeah, no jury. Just let—let the Judge find me not guilty or guilty.

> "THE COURT:   Okay. But if—

> "[LEGAL ADVISOR]:   That's a separate issue though. She's asking you a different question.

> "THE COURT:   Yeah. So the—the first question is, do you now want a lawyer? Do you want a lawyer to represent you instead of you acting as your own lawyer? Because that's kind of what I heard you say before we took a break and before you spoke to [your legal advisor]. So that's my first question.

> "[DEFENDANT]:   Now, if I can be my own lawyer, the only evidence I've got *** [is] the CARES report. That's the only thing I got in my defense. ***

> "THE COURT:   So, regardless of what evidence you believe you have or don't have, do you want to be the person

to represent yourself or do you want a lawyer? Because you started to say that, you know, this was a lot harder than you thought, and it is; and that your life is at stake, and it is, in terms of potentially being found guilty or not guilty of the charges *** [in] the charging instrument.

"So, based on—we did talk a lot this morning about the types of stuff that get to be told to the trier of fact, whether it's a jury or a judge.

"We talked about limitations. Those would be true even if [your legal advisor], or anybody else, represented you. Any person who is sitting at that table as a defense attorney would have the same restrictions.

"The point I've tried to make all morning is that when you act as your own lawyer, you are treated exactly the same as a lawyer. You do not get any special treatment or special exceptions at all.

"[DEFENDANT]:   Okay. Could *** we still have *** a court route with [my legal advisor] as my attorney? That'd be permissible?

"THE COURT:   It—that's something that you two talked about. And so—

"[DEFENDANT]:   Do we have to wait—

"THE COURT:   That is something that the two of you talked about, so I don't know that answer ***.

"[LEGAL ADVISOR]:   I can do it tomorrow.

"THE COURT:   Okay. So, yeah, we could.

"[DEFENDANT]:   Okay.

"THE COURT:   And [your legal advisor] would be ready tomorrow.

"[DEFENDANT]:   Okay, Your Honor. I—accept that.

"THE COURT:   So you would like [your legal advisor] to be your attorney ***[?] So, you are comfortable with [your legal advisor] as your lawyer, who said he would be ready to go in the morning, with the Court trial with me?

"[DEFENDANT]:   Yes."

After another recess, the trial court reviewed defendant's written waiver of his right to a jury trial, and

defendant stated that he had reviewed it with his attorney, that he understood it, and that he made his decision to waive his right to a jury freely and voluntarily. The trial court accepted defendant's waiver of his right to a jury trial.

After a bench trial over the following two days, the trial court acquitted defendant of two counts of first-degree sexual abuse and found defendant guilty of three counts of first-degree sodomy and two counts of first-degree sexual abuse. The trial court merged the verdicts on the counts of first-degree sexual abuse into the counts of first-degree sodomy, entered a judgment of conviction for three counts of first-degree sodomy, and sentenced defendant to 390 months in prison.

## ANALYSIS

On appeal, in his fourth assignment of error, defendant argues that the trial court erred in accepting his waiver of his right to self-representation because the waiver was not knowing or voluntary. The state responds that defendant did not preserve the argument that the waiver was not voluntary, but the state does not argue that defendant did not preserve the argument that he did not knowingly waive the right. We focus on that aspect of defendant's argument.[1] We begin with an overview of the relevant legal principles.

Article I, section 11, of the Oregon Constitution provides, in part, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" The right to be heard by oneself "includes the right to self-representation at trial." *State v. Hightower*, 361 Or 412, 416, 393 P3d 224 (2017). It is "the counterpart to the right to be represented by counsel at trial," and criminal defendants have "a choice either to be represented by counsel or to represent" themselves. *Id.* at 417. By "asserting the right to counsel, a defendant waives the right to self-representation." *Id.*

---

[1] Although the state does not argue that defendant failed to preserve the argument that he did not knowingly waive his right to self-representation, we further note that shortly before his re-appointment as defendant's attorney, his legal advisor pointed out that it was the requirement to participate in jury selection that most concerned defendant. That was sufficient to preserve the argument that defendant waived his right to self-representation based on a misunderstanding of the scope of that right.

"[A] waiver of the Article I, section 11, right to counsel or to self-representation must be knowing and voluntary." *Id.* "A waiver is an intentional relinquishment or abandonment of a known right or privilege." *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992). "[T]he 'known right' component of a waiver 'refers to the defendant's knowledge and understanding of the right[.]'" *State v. Jacobson*, 296 Or App 87, 94, 437 P3d 243 (2019) (quoting *Meyrick*, 313 Or at 132 n 8). Whether there has been an intentional relinquishment of a known right "will depend on the particular circumstances of each case." *Meyrick*, 313 Or at 132. "[T]he trial court should focus on what *the defendant* knows and understands." *Id.* (emphasis in original).

When a defendant's request for self-representation or to appoint counsel has the potential to disrupt the proceedings, we review the trial court's decision on the request for abuse of discretion. *State v. Covernali*, 341 Or App 476, 483-84, 574 P3d 496 (2025) (citing *Hightower*, 361 Or at 418). "When the trial court's decision is predicated on a subsidiary conclusion of law—for example, a legal conclusion about the scope of the right—we review that determination for legal error." *State v. Nyquist*, 293 Or App 502, 503, 427 P3d 1137 (2018).

There is a similar right to self-representation under the Sixth Amendment to the United States Constitution.[2] *Hightower*, 361 Or at 420. In *Faretta v. California*, 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975), the United States Supreme Court noted that criminal defendants who chose to exercise their right to self-representation may conduct their defense to their "detriment," but that choice "must be honored out of that respect for the individual which is the lifeblood of the law." *Id.* at 835 (internal quotation marks omitted). As explained by the Oregon Supreme Court, in exercising the right to self-representation under the Sixth Amendment, "a defendant might employ a strategy that does not fully challenge the state's case. * * * Or a *pro se* defendant may refuse to participate or be present during a trial." *State v. Lacey*, 364 Or 171, 182, 431 P3d 400 (2018). "[A] defendant has the

---

[2] The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

right to self-representation, which is based on respect for the defendant's autonomy, and *** when exercising that right, a defendant can choose not to participate in, or even attend, trial." *Id.* at 185.[3]

With those legal principles in mind, we consider defendant's argument that the trial court erred in accepting his waiver of his right to self-representation because it was not a knowing waiver. Defendant argues that the court's rulings prohibiting him from wearing prison clothes and requiring him to participate in jury selection meant that he "did not have a full understanding of his right to self-representation and the accompanying autonomy that it provided. Rather, the court communicated to defendant that his right to control his own defense was far more limited than it actually was and that the court could require his participation at all stages."

The state responds that the trial court did not make those rulings, and even if it had, defendant's decision to waive self-representation was based on his lack of knowledge about the rules of evidence and trial procedure. The state also argues that even if the trial court's rulings prohibiting prison clothes and requiring participation in jury selection "played some part in defendant's decision-making, that does not render defendant's waiver void, because the record, considered as a whole, demonstrates that defendant was aware of the dangers of self-representation when he chose to request counsel."

Considering those arguments and having reviewed the record, we agree with defendant that he did not knowingly waive his right to self-representation because it was based, at least in part, on a misunderstanding of the scope of that right, which as noted above, we review for legal error. We recognize that a defendant's right to self-representation

---

[3] In *Lacey*, the Supreme Court addressed the scope of the right to self-representation under the Sixth Amendment to the United States Constitution, not under Article I, section 11, of the Oregon Constitution. *Lacey*, 364 Or at 180 n 4. Although *Hightower* describes the state and federal right as similar, 361 Or at 420, we offer no opinion on whether they are equivalent. Nevertheless, in determining whether a criminal defendant has knowingly waived the right to self-representation, we think it is incumbent on trial courts to consider the scope of that right under both the state and federal constitutions, especially given our Supreme Court's analysis of the federal right in *Lacey*.

is not unlimited. For example, a defendant's Article I, section 11, right to self-representation may be overcome by the court's responsibility to conduct the trial in an orderly and expeditious manner. *State v. Rogers*, 330 Or 282, 301, 4 P3d 1261 (2000). The right to self-representation is also trumped by "the trial court's overriding obligation to ensure the fairness and integrity of the trial \*\*\*." *Hightower*, 361 Or at 417-18.

Nevertheless, in exercising the right to self-representation, and within those or similar limits, "a *pro se* defendant must be allowed to control the defense." *Lacey*, 364 Or at 184. Under the Sixth Amendment, the right to self-representation "is based on respect for the defendant's autonomy," and "when exercising that right, a defendant can choose not to participate in, or even attend, trial." *Id.* at 185.

Given our Supreme Court's explanation of the scope of the right in *Lacey*, we think that the trial court overreached when it ruled that, if defendant intended to represent himself, then he was required to participate in jury selection. Although the trial court was concerned to ensure defendant received a fair trial, it was defendant's choice whether to participate in jury selection. Although his desire not to participate in jury selection may have been a bad decision, we are not aware of any legal authority requiring a *pro se* defendant to participate in jury selection or indicating that the failure to do so renders a defendant's trial unfair. If the right to self-representation includes the right not to participate in the trial at all, *see id.*, then it must also encompass the right not to participate in jury selection.

We emphasize that "[t]here is no affirmative duty on the part of the court to inform a *pro se* defendant of the existence and content of court rules. A defendant appearing *pro se* must inform himself of and comply with court rules as any other litigant." *State v. Palmer*, 35 Or App 125, 128, 580 P2d 592 (1978). But the state has not pointed us to any rule of law requiring a *pro se* defendant to participate in jury selection. Although other factors may also have been at play in defendant's decision to waive his right to self-representation, including a greater appreciation of the limitations imposed by the rules of evidence, in determining whether defendant's

waiver was knowing, we look to "the totality of the circumstances." *Meyrick*, 313 Or at 136. Here, the trial court indicated that defendant would be required to participate in jury selection, and that ruling was a factor in defendant's decision to waive his right to self-representation. Based on that restriction on defendant's right, we conclude that his waiver of the right was not an informed and knowing choice, and thus, the trial court committed legal error in accepting the waiver and determining that if defendant intended to represent himself then he was required to participate in jury selection.

We further conclude that the error in accepting defendant's waiver of the right to self-representation was not harmless because we cannot tell what the outcome of the case would have been if defendant had not waived the right. *See State v. Erb*, 256 Or App 416, 427, 300 P3d 270 (2013) (applying that test for harmless error in a case in which there was a failure to show that defendant knowingly waived her right to counsel). We therefore reverse and remand for further proceedings.

Because the issue may arise again on remand, we clarify that defendant's right to self-representation does not include the right to wear prison clothes at a jury trial. That would risk prejudicing the jury against defendant and communicating to the jury that defendant had prior convictions, albeit ones that were later vacated. A *pro se* defendant's right to control the defense is not unbounded or absolute. In our view, the trial court's ruling that defendant could not wear prison clothes at trial was justified by the need to conduct the trial in a manner that did not undermine the presumption of defendant's innocence. *See Estelle v. Williams*, 425 US 501, 504, 96 S Ct 1691, 48 L Ed 2d 126 (1976) (stating that "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system"). Other than clarifying that issue, we do not reach defendant's other assignments of error, including the arguments made in defendant's *pro se* supplemental brief.

Reversed and remanded.